## LONG v. THAYER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF MISSOURI.

No. 471. Submitted November 27, 1893. — Decided December 11, 1893.

T. bought a tract of land in Kansas City of S. & W. under a contract on
their part signed by K. as their agent, under which payments were to be
made at stipulated times, notes bearing interest to be given for those
sums, and a deed to be given on final payment. The agent's authority
from W. was in writing; from S., it was verbal. W. died shortly after
the contract was made, and before any payment matured. T. went into
possession, gave the notes, made payable to K. or bearer, made payments
to K. as they became due, without knowledge of the death of W., and im-
proved the property by erecting buildings upon it. On making the last
payment he was informed that W. had died. The interests of W. and S.
became vested in L., who brought a suit in ejectment against the tenant
of T. T. intervened in that suit and his equitable defence being over-
ruled, filed a bill to restrain its further prosecution. *Held,*

(1) That the death of W. revoked K.'s authority to act for him or his
estate, and payments made to K. as his agent after his death did
not discharge T.'s obligation to his estate;

(2) That whether it also operated as a revocation of the verbal author-
ity given by S., may admit of some doubt, but is unimportant in
view of the long silence of S.;

(3) That in view of the character of the notes, and in view of the fact
that L. was not an innocent purchaser, but took title with full
knowledge of the facts, including the open, notorious and une-
quivocal possession of the property by T., the decree of the court
below, granting a perpetual injunction on payment into court of
one half of the purchase money with interest, should be affirmed.

THIS was a bill in equity filed by Thayer to enjoin the en-
forcement of a judgment obtained by Long against one
Townsend R. Smith, a tenant under Thayer, of a lot in
Kansas City.

Thayer had bought the lot of Skiles and Western under a
contract signed by one J. F. Kinney as their agent, dated June
30, 1870, by which, in consideration of $50 in cash, a promis-
sory note at three months for $102.50 and another note at one
year for $150, with ten per cent interest, Skiles and Western

had agreed to give Thayer a deed, with a proviso that failure to pay either of said notes at maturity should forfeit the contract. A few days thereafter, and on July 9, 1870, Western died. Thayer took possession under his contract and made all the payments as therein required to Kinney, but at the time the last payment was made (August 14, 1871) he was informed by Kinney that Western had died. At the time he made the first payment (September 13, 1870) Western was dead, but Thayer was not informed of it. After Thayer went into possession he erected a frame cottage with the usual outbuildings and improvements, and remained in possession of the premises until the filing of this bill.

In 1885 or 1886 Western's widow married Long, the plaintiff in the ejectment suit, and Western's heirs, Lucy U. Western and Elgin U. Western, made a warranty deed of the land to Long, who shortly thereafter brought suit in ejectment against Townsend R. Smith, Thayer's tenant. Thayer, learning of the suit, intervened and was made a party defendant. He set up an equitable defence, which was overruled as inconsistent with the practice of the Federal courts. Thereupon he filed this bill, and applied for an injunction to restrain Long from further prosecuting his suit. There was no evidence tending to show that any administrator or executor had been appointed for Western's estate, or any guardian for his minor heirs, capable of receiving payment from Thayer. Skiles' interest became ested in Western's heirs by virtue of a partition suit and litigation over the title to the land in question, to which litigation Thayer was not made a party. These partition proceedings occurred in 1873, after Thayer had made his last payment.

Upon a final hearing, the Circuit Court decreed that, upon payment by Thayer into court of the sum of $126.25, with interest at ten per cent from June 13, 1870, the injunction be made perpetual; and that the defendant place in the registry of the court deeds of the interest of the Western heirs, and a quitclaim of his own interest in the property in controversy to the appellant, etc. From this decree the defendant Long appealed to this court.

*Mr. A. H. Garland* and *Mr. H. J. May* for appellant.

*Mr. P. E. Hatch, Mr. R. B. Middlebrook,* and *Mr. William A. McKenney* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case turns largely upon the legal effect to be given to the death of Western, which took place a few days after the contract for the sale of the land was made, and before the first note became due. Had Western not died, there can be no question that the payments to Kinney would have been good, and that Thayer would have been entitled to a deed.

Western's death undoubtedly operated as a revocation of Kinney's authority to act for him or his estate. The payments made to Kinney as his agent would not be sufficient to discharge Thayer's obligation to his estate, even if such payments were made by him in actual ignorance of Western's death. *Michigan Insurance Co.* v. *Leavenworth,* 30 Vermont, 11; *Davis* v. *Windsor Savings Bank,* 46 Vermont, 728; *Jenkins* v. *Atkins,* 1 Humphrey, (Tenn.) 294; *Clayton* v. *Merrett,* 52 Mississippi, 353; *Lewis* v. *Kerr,* 17 Iowa, 73. Indeed it was said by this court in *Galt* v. *Galloway,* 4 Pet. 332, 344, that " no principle is better settled, than that the powers of an agent cease on the death of his principal. If an act of agency be done, subsequent to the decease of the principal, though his death be unknown to the agent, the act is void."

Whether Western's death also operated as a revocation of the verbal authority given by Skiles may admit of some doubt, although the weight of authority is that the death of one partner or joint owner operates, in the case of a partnership, to dissolve the partnership, and in the case of a joint tenancy to sever the joint interest; and the authority of an agent appointed by a firm or joint owners thereupon ceases, where such authority is not coupled with an interest. *McNaughton* v. *Moore,* 1 Haywood, (N. C.) 189; *Rowe* v. *Rand,* 111 Indiana, 206.

But even if it did operate as a technical revocation of Kinney's authority to act 'for Skiles, the presumption is, from Skiles' long silence, in the absence of proof to the contrary, that Kinney accounted to him for his proportion of the money collected. The court below evidently proceeded upon this theory, and required Thayer, as a condition for calling upon Long for a deed, to repay one-half of the amount of the two notes with the stipulated interest at 10 per cent. These were certainly as favorable terms as Long could expect. Thayer had paid the money to Kinney, with whom the contract was made — the first payment in actual ignorance of Western's death, and the second doubtless under the supposition, which a person unlearned in the law might reasonably entertain, that payment to the person with whom the contract was made was sufficient, and that Kinney would account to the proper representatives of Western, and procure him a deed. All the equities of the case were in Thayer's favor, and justice de-manded that Long should be required to convey, upon being paid Western's share of the consideration with interest.

There is another view of the case which does not seem to have been presented to the court below, and which indicates that Long received even more than he was really entitled to. The second note of $150, which is produced, appears upon its face to have been payable to "J. F. Kinney or *bearer*," and while the first note is not produced, Kinney swears that this was also payable in the same manner. The probabilities are that it was, both from the fact that the second note was payable to bearer and from the further fact that Kinney claimed that Western was largely indebted to him. If such were the case (and Kinney's authority to take these notes is not disputed) it is difficult to see why the payments to Kinney, who himself held the notes, were not valid payments, which entitled Thayer to a deed to the land. So long as these notes were outstanding, he could not safely pay to any one else, and if he paid the holder, he did just what the contract required him to do.

Long clearly was not an innocent purchaser of the land in question. Not only had Thayer been in the open, notorious, and unequivocal possession of the land and its improvement,

renting the premises and paying the taxes, but Long's marriage into the Western family, his taking a deed from the heirs through Mr. Meriwether, the husband of one of the heirs, who acted as attorney both for Long and for the heirs, and the giving of a promissory note unsecured by mortgage upon the land — a note which the heirs apparently never saw — indicate very clearly that he could not have been ignorant of the true situation.

The decree of the court below was clearly right, and must be

*Affirmed.*