**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIONAL LABOR RELATIONS
BOARD,
                    *Petitioner,*

            v.

C & C ROOFING SUPPLY, INC.,
                    *Respondent.*

No. 08-70335

NLRB Nos.
28-CA-20803
28-CA-21066
28-CA-21392

OPINION

On Petition for Enforcement of an Order of the
National Labor Relations Board

Argued and Submitted
June 10, 2009—San Francisco, California

Filed June 25, 2009

Before: Procter Hug, Jr., Betty B. Fletcher and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge B. Fletcher:

## COUNSEL

Robert Englehart, Assistant General Counsel, National Labor Relations Board, Washington, D.C., for the petitioner.

Michael E. Avakian, Smetana & Avakian, Springfield, Virginia, for the respondent.

## OPINION

B. FLETCHER, Circuit Judge:

The National Labor Relations Board ("the Board") petitions for enforcement of its order approving a consent judgment against C&C Roofing Supply, Inc. ("C&C"). C&C cross-petitions for review of the order. We have jurisdiction pursuant to 29 U.S.C. § 160(e), and we grant the Board's petition for enforcement.

## FACTS

After winning a certification campaign to represent C&C's employees, the United Union of Roofers, Waterproofers and Allied Workers filed three unfair labor practice charges against C&C. The last of these alleged that the company had unlawfully terminated twenty employees. The Board's General Counsel issued a complaint which consolidated all three charges, alleging that C&C had violated § 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158 *et seq*. This appeal concerns only the unlawful termination charge.

The parties reached a Formal Settlement Stipulation ("Settlement") before the dispute went before the Board. The Settlement admitted C&C's liability for the unlawful terminations, and provided for reinstatement and a certain amount of backpay for each employee. The Settlement was to become effective immediately upon approval by the Board, and C&C agreed to "immediately comply with the provisions of the order" upon Board approval. C&C also waived its right to contest this consent judgment.

The Board approved the consent judgment on December 20, 2007, but C&C did not comply with its terms. Instead, C&C asserted that it could not lawfully comply with the judgment because it had evidence that many of the employees to be reinstated were unauthorized aliens, and therefore the company could not reinstate them without violating federal and state immigration laws. The Board's General Counsel filed an application for enforcement with this court on January 23, 2008.

## ANALYSIS

We give considerable weight to the Board's determination on how best to expunge the effects of unfair labor practices. *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943).

## I.  The General Counsel has authority to petition for enforcement of Board orders.

C&C asserts that the filing of the application for enforcement was an exclusive act of the General Counsel that has not been approved by the Board. It argues that section 10(e) of the NLRA, 29 U.S.C. § 160(e), grants the power to petition for enforcement of an order to the Board, and that it was impermissible for the Board to purport to delegate this power to the General Counsel.

The "impermissible delegation" that C&C challenges is a memorandum published by the Board on December 28, 2007. NLRB Press Release R-2653 (December 28, 2007), http://www.nlrb.gov/shared_files/Press%20Releases/2007/R-2653.pdf. In this memorandum, issued just before three of the five Board members' terms expired on December 31, 2007, the Board voted to temporarily delegate certain authority under § 10(e) to the General Counsel until such time as the Board regained a quorum. *Id.* C&C believes that the General Counsel purports to garner his authority to petition for enforcement from this temporary delegation. Because C&C views this as an impermissible delegation of agency power, it concludes that the General Counsel has no authority to petition for enforcement of Board Orders.[1]

**[1]** C&C has misread the Board's December 28, 2007 memorandum and the context in which it was issued. The General Counsel has had the authority to petition for enforcement of Board orders since 1955. In a memorandum published in the Federal Register on April 6, 1955, the Board delegated certain powers to the General Counsel, some of which were purposefully conditioned upon case-by-case Board approval:

---

[1]C&C maintains that absent this illegitimate delegation of authority, the General Counsel would not have the power to petition for enforcement on his own because such power is not enumerated in the description of the General Counsel's powers in 29 U.S.C. § 153(d).

B. *Court litigation.*

The General Counsel of the Board is authorized and has responsibility, on behalf of the Board, to seek and effect compliance with the Board's orders and make such compliance reports to the Board as it may from time to time require.

On behalf of the Board, the General Counsel of the Board will, in full accordance with the directions of the Board, petition for enforcement and resist petitions for review of Board Orders as provided in section 10(e) and (f) of the act, initiate and prosecute injunction proceedings as provided in section 10(j), seek temporary restraining orders as provided in section 10(e) and (f), and take appeals either by writ of error or on petition for certiorari to the Supreme Court: *Provided, however*, That the General Counsel will initiate and conduct injunction proceedings under section 10(j) or under section 10(e) and (f) of the act and contempt proceedings pertaining to the enforcement of or compliance with any order of the Board only upon approval of the Board, and will initiate and conduct appeals to the Supreme Court by writ of error or on petition for certiorari when authorized by the Board.

20 Fed. Reg. 2175 (1955), emphasis in original. Thus, the regulation authorizes the General Counsel to petition for enforcement in the courts of appeals, but this authority is ***not*** one of those conditioned on approval of the Board. A careful reading shows that only injunction proceedings, contempt proceedings, and appeals to the Supreme Court require individualized Board approval.

**[2]** The Board's temporary delegation letter of December 20, 2007 delegates only authority to pursue injunction proceedings, which would otherwise require case-by-case

approval by the Board under the 1955 regulation. The Press Release states that the Board delegates to the General Counsel full "authority on all court litigation matters that would otherwise require Board authorization. This delegation will give the General Counsel full and final authority on behalf of the Board to initiate and prosecute injunction proceedings under Section 10(j), or Section 10(e) and (f), of the [Act]." NLRB R-2653.

**[3]** The General Counsel's authority to petition the courts of appeals for enforcement relied on in this case is permanently within the General Counsel's authority, and does not derive from the temporary delegation of 2007. Accordingly, we need not address C&C's contention that the temporary delegation was unlawful.

## II. C&C can adhere to its agreement without violating federal or state immigration laws.

**[4]** C&C refuses to comply with the consent judgment because it contends that compliance will require it to violate the Immigration Control and Reform Act of 1986, ("ICRA"), 8 U.S.C. § 1324a(a)(1), and the Legal Arizona Workers Act, Ariz. Rev. Stat. § 23-212. Both of these statutes prohibit the hiring of unauthorized aliens. It is conceded that the Board is not free to ignore federal statutes or policies outside the National Labor Relations Act. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 143 (2002). In *Hoffman*, the Supreme Court held that the Board may not fashion a remedy that includes backpay for unauthorized aliens because doing so would violate the ICRA. *Id*. at 149. C&C argues that *Hoffman* precludes enforcement of the consent judgment here.

**[5]** In this case, however, C&C voluntarily entered into a settlement agreement, embodied in a consent judgment, both for liability and applicable remedies. Rather than pursuing a comprehensive settlement, C&C could have admitted liability, but contested backpay awards on the grounds that some of the

terminated employees were "unavailable" for work during any period when they were not lawfully entitled to be present and employed in the United States. *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 903 (1984). If it had done so, C&C would then have had an opportunity to introduce evidence regarding when those employees were not eligible to be employed in the United States and the Board would not have included any periods of unavailability in its backpay calculations. *See id.* Instead, C&C waived all defenses, including this one, and agreed to a final settlement in which it would pay specified liquidated sums to each terminated employee. Unlike reinstatement and backpay, liquidated damages do not pose an irreconcilable conflict with ICRA, because they are not predicated on an employee's availability for work. Rather, they are based on the company's assessment that paying these sums was preferable to further litigation.

**[6]** C&C can adhere to the terms of its bargained-for agreement without violating federal or state immigration laws. The Board has a procedure for just this situation: upon receiving proper proof of a person's unauthorized status, the Board will absolve C&C of the obligation to rehire that person, in accordance the Board's obligation to take into account the requirements of federal immigration law. *See Sure-Tan*, 467 U.S. at 902-03. Although C&C therefore cannot be ordered to reinstate workers who may not lawfully be employed in the United States, it must still comply with the Settlement in all other respects, including the requirements that it cease further NLRA violations and that it pay the liquidated sums to which it agreed. Having agreed to these sums and waived its opportunity to dispute the amounts owed to each individual, C&C cannot now escape the existing regulatory process for the settlement's enforcement.

Our decision to enforce this consent judgment does not order any party to violate federal or state immigration laws. Rather, the effect of our holding is to place the burden on C&C to provide proper proof, satisfactory to the Board, of the

unauthorized status of those individuals it claims are unauthorized aliens, and to rehire the others. In the discretion of the Board, in the event of C&C's failure to comply, contempt sanctions could be sought.

**[7]** The Board's petition for enforcement is GRANTED; C&C's petition for review is DENIED. C&C's Motion to Supplement the Record is also DENIED.