# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3209

_____

Marlin O. Osthus,                              *
Regional Director of the                       *
Eighteenth Region of the National             *
Labor Relations Board;                         *
National Labor Relations Board,                *
                                               *
      Plaintiffs - Appellees,             *       Appeal from the United States
                                               *       District Court for the
v.                                             *       Southern District of Iowa.
                                               *
                                               *
Whitesell Corporation,                         *
                                               *
      Defendant - Appellant.              *

_____

Submitted: April 13, 2010
Filed: April 22, 2011

_____

Before RILEY, Chief Judge, and COLLOTON and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The Regional Director of the Eighteenth Region of the National Labor Relations Board (respectively, "Director" and "Board") requested an injunction under section 10(j) of the Labor Management Relations Act, 1947, 29 U.S.C. § 160(j). The district court granted the injunction. Whitesell Corporation appeals. Having jurisdiction under 28 U.S.C. § 1292(a)(1), this court vacates and remands.

# I.

In 2005, Whitesell purchased a manufacturing facility in Washington, Iowa. Its production and maintenance employees were represented by the Glass, Molders, Pottery, Plastics and Allied Workers International Union Local 359. Whitesell agreed to abide by the collective bargaining agreement scheduled to expire on June 12, 2006.

In May 2006, Whitesell and the Union began negotiations. After eight bargaining sessions, Whitesell declared an impasse and unilaterally implemented its final offer. The Union filed unfair labor practice charges. The Director filed an administrative complaint charging that Whitesell had prematurely declared impasse, in violation of 29 U.S.C. §§ 158(a)(1) and (a)(5). With the Board's authorization, the Director also sued under § 10(j) to enjoin Whitesell's alleged unfair labor practices until the Board resolved the complaint. The district court granted a temporary injunction, requiring Whitesell to rescind the implemented employment terms and to bargain in good faith. Whitesell did not appeal that injunction, and the Board continued processing the charges. After initially denying enforcement, this court is considering the Board's final order in a separately-docketed case. *See NLRB v. Whitesell Corp.*, No. 10-2934 (8th Cir. filed Aug. 30, 2010); *NLRB v. Whitesell Corp.*, 385 Fed. Appx. 613 (8th Cir. 2010) (unpublished per curiam) (denying enforcement).

The parties continued bargaining, unsuccessfully, throughout 2007. As the end of 2007 approached, the Board had four members and one vacancy. The recess appointments of two members were set to expire at the end of the year, leaving the Board with only two members – one short of a quorum. *See* **29 U.S.C. § 153(b)**; *New Process Steel, L.P. v. NLRB*, ___ U.S. ___, 130 S. Ct. 2635, 2638 (2010). On December 20, 2007, the four sitting members temporarily delegated to the General Counsel, effective December 28, 2007, "authority on all court litigation matters" that otherwise would require case-by-case authorization by the Board. The delegation

stated that it gave the General Counsel full and final authority on behalf of the Board to "initiate and prosecute injunction proceedings under Section 10(j)." *See* **News Release R-2653, NLRB, Labor Board Temporarily Delegates Litigation Authority to General Counsel** (Dec. 28, 2007).[1]

In April 2009, after further bargaining, Whitesell implemented its final offer. The Director filed three more administrative complaints, alleging bad faith bargaining in violation of 29 U.S.C. §§ 158(a)(1) and (5). Acting on the General Counsel's authorization rather than the Board's, the Director petitioned the district court, which granted a second § 10(j) injunction on September 11, 2009. Whitesell appeals the order granting this injunction.

## II.

Whitesell disputes the district court's subject matter jurisdiction, asserting that the General Counsel may not sue under § 10(j). This court reviews the issue de novo. ***Borntrager v. Cent. States Se. & Sw. Areas Pension Fund***, 577 F.3d 913, 919 (8th Cir. 2009).

First, Whitesell argues that the Board may not delegate § 10(j) authority. For more than sixty years, district courts have upheld such delegations. *See **Kentov v. Point Blank Body Armor, Inc.***, 258 F. Supp. 2d 1325, 1329 (S.D. Fla. 2002); ***Penello v. Int'l Union, United Mine Workers***, 88 F. Supp. 935, 937 (D.D.C. 1950); ***Evans v. Int'l Typographical Union***, 76 F. Supp. 881, 888-89 (S.D. Ind. 1948). Courts of

---

[1] The Board had also temporarily delegated its § 10(j) power in 1947, 1993, and 2001. *See **Overstreet v. El Paso Disposal, L.P.***, 668 F. Supp. 2d 988, 1001 & n.26 (W.D. Tex. 2009). The 2007 delegation was automatically revoked in April 2010 when additional members joined the Board. *See* **News Release R-2766, NLRB, New Board ratifies the General Counsel's litigation authority in 2008-09** (July 8, 2010).

appeals have upheld the 2007 delegation at issue here.  *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010); *Muffley v. Spartan Mining Co.*, 570 F.3d 534, 540 (4th Cir. 2009).  This court adheres to this long-established interpretation of the Labor Management Relations Act.  The Board may delegate § 10(j) authority to the General Counsel.

Second, Whitesell contends that the delegation lapsed when the Board lost its quorum.  The District of Columbia Circuit took this view.  *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d 469, 475 (D.C. Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 3498, 3499 (2010).  But in a separate case, the Supreme Court declined to endorse the D.C. Circuit's position.  *New Process Steel*, 130 S. Ct. at 2642 n.4.  Later, the Fifth Circuit held that "the General Counsel retained the § 10(j) power, despite fluctuations in the membership of the Board."  *El Paso Disposal*, 625 F.3d at 853-54.  The Fifth Circuit's conclusion fits with the administrative scheme of the Labor Management Relations Act.  The Act's framers "determine[d] that the General Counsel of the Board should be independent of the Board's supervision and review."  *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 118 (1987).  Indeed, the General Counsel "'is ultimately responsible to the President and Congress.'"  *Int'l Typographical Union*, 76 F. Supp. at 888 n.1, *quoting* **H.R. Rep. 510, 80th Cong., 1st Sess., at 37 (1947) (Conf. Rep.)**, *reprinted in* **1947 U.S. Code Cong. Serv. 1135, 1143**.  In light of the Act's framework and the Supreme Court's view of *Laurel Baye Healthcare*, this court joins the Fifth Circuit in concluding that the delegation survived the loss of a Board quorum.

The district court had subject matter jurisdiction.

## III.

Turning to the merits, this court "review[s] the District Court's material factual findings for clear error, its legal conclusions de novo, and the court's equitable judgment – the ultimate decision to grant the injunction – for an abuse of discretion."

*Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 689-90 (8th Cir. 2003) (citation omitted). In this circuit, district courts apply the general four-factor preliminary injunction test to § 10(j) petitions. *Sharp v. Parents In Cmty. Action, Inc.*, 172 F.3d 1034, 1038-39 (8th Cir. 1999). *See also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc) (formulating four-factor test). Section 10(j) relief "is reserved for 'serious and extraordinary' cases." *Parents In Cmty. Action*, 172 F.3d at 1037, *quoting Minnesota Mining & Mfg. Co. v. Meter*, 385 F.2d 265, 270 (8th Cir. 1967).

In granting or refusing an injunction, "the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." **Fed. R. Civ. P. 52 advisory committee's note** (1946) (citations omitted). "Merely indicating the factual basis for the ultimate conclusion will suffice in most cases." *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1092 (8th Cir. 1980), *citing United States v. Birnbach*, 400 F.2d 378, 382 (8th Cir. 1968).

Here, however, minimal requirements were not met. The district court's brief document, labeled "Findings of Fact and Conclusions of Law Supporting Temporary Injunction," presents the alleged unfair labor practices cryptically. *See* **Appendix A to this opinion**. It does not specially find facts or explain how the Director meets the requirements for an injunction. "[T]he court must find the facts specially . . . ." **Fed. R. Civ. P. 52(a)(1)**. "In granting or refusing an interlocutory injunction, the court must similarly state the findings . . . that support its action." **Fed. R. Civ. P. 52(a)(2)**. This court has disapproved a similar order that, while shorter, discussed more directly how the plaintiff satisfied the injunction factors. *See James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982) (National Environmental Policy Act case; district court order attached as Appendix B to this opinion). *See also Johansen v. San Diego County Dist. Council of Carpenters of United Bhd. of Carpenters & Joiners*, 745 F.2d 1289, 1294 (9th Cir. 1984) (§ 10(l) case) ("We must be provided with fact findings that inform us whether the hiatus injunction of primary picketing

will help prevent the perpetuation of the effects of the unlawful secondary boycott. Without that information, we cannot fulfill our function of review.").

This court vacates the district court's order granting the § 10(j) injunction. On remand, the district court should specially make factual findings, detailing specific actions in the bargaining process and the facts underlying each element of the four-factor injunction test.

\* \* \* \* \* \* \*

The order of the district court is vacated and the case remanded for further proceedings consistent with this opinion.

COLLOTON, Circuit Judge, concurring.

As the opinion of the court observes, federal courts have ruled consistently for more than sixty years that the National Labor Relations Board may delegate its authority to seek an injunction under Section 10(j) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 160(j), to the General Counsel of the Board. *See Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010); *Muffley v. Spartan Mining Co.*, 570 F.3d 534, 540 (4th Cir. 2009); *Kentov v. Point Blank Body Armor, Inc.*, 258 F. Supp. 2d 1325, 1329 (S.D. Fla. 2002); *Penello v. Int'l Union, United Mine Workers of Am.*, 88 F. Supp. 935, 937 (D.D.C. 1950); *Evans v. Int'l Typographical Union*, 76 F. Supp. 881, 888-89 (S.D. Ind. 1948). Whitesell argues that all of these cases were decided incorrectly, primarily because the statute describes the authority to seek an injunction as a "power" of the Board, 29 U.S.C. § 160(j), whereas the General Counsel "shall have such other *duties* as the Board may prescribe or as may be provided by law." *Id.* § 153(d) (emphasis added). Whitesell contends that the Board may not prescribe a "duty" of the General Counsel that involves the exercise of a "power" of the Board.

The Board first delegated its Section 10(j) authority in 1947. The Board assigned this authority to its regional directors, pursuant to the Board's rulemaking authority, *see* 29 U.S.C. § 156; 29 C.F.R. § 202.35 (Supp. 1947), and also entered into a memorandum of understanding with the General Counsel giving him full authority to initiate and prosecute injunction proceedings under Section 10(j). *See* 13 Fed. Reg. 654, 655 (Feb. 13, 1948); *see also Evans*, 76 F. Supp. at 888 ("[A] regional director, although an appointee of the Board, is under the supervision and is a subordinate of the General Counsel. As a consequence, such a delegation of authority by the Board to the regional directors as is embodied in Rule 202.35, is, in effect, nothing less than a delegation of authority to the General Counsel."). Although the Board repealed the standing delegation in 1955, 20 Fed. Reg. 2175 (Apr. 6, 1955), the Board temporarily delegated its Section 10(j) authority to the General Counsel in 1993, 2001, and 2007, again demonstrating its view that § 153(d) permits such a delegation. *See Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 1001 & n.26 (W.D. Tex. 2009), *aff'd as modified*, 625 F.3d 844.

When evaluating an agency's interpretation of a statute, the Supreme Court has instructed that "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time" all are factors that weigh in favor of deferring to the agency's interpretation under the doctrine of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). *Barnhart v. Walton*, 535 U.S. 212, 222 (2002). In light of these considerations, the Board's interpretation of § 153(d) – a statute that it is charged with administering – is entitled to deference. *Cf. Teamsters Local Union No. 523 v. NLRB*, 590 F.3d 849, 850-51 (10th Cir. 2009) (applying *Chevron* to the Board's interpretation of its delegation authority under § 153(b)), *abrogated on other grounds by*, *New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635 (2010). The Board's view therefore governs if it is a reasonable interpretation of the statute. *Entergy Corp. v. Riverkeeper, Inc.*, 129 S. Ct. 1498, 1505 & n.4 (2009).

The textual argument advanced by Whitesell does not establish that the Board's interpretation is unreasonable. To be sure, there may be a distinction between the terms "power" and "duty" when applied to a single officer or entity, on the view that "power" is the privilege to take an action and "duty" is an obligation to take an action. *See Black's Law Dictionary* 1288 (9th ed. 2009) (defining "power" as "[t]he legal right or authorization to act or not act"); *id.* at 580 (defining "duty" as a "legal obligation"); *cf.* U.S. Const. art. II, § 1, cl. 6 (referring to the "Powers and Duties" of the President); *id.* amend. XXV, §§ 3, 4 (same). But "duty" also means, *inter alia*, "conduct due . . . superiors," *Webster's Third New International Dictionary* 705 (2002), and it is not logically inconsistent for Congress to say that a superior body (the Board) may task a subordinate official (the General Counsel) with the "duty" to exercise some of the Board's "power."

The text of the LMRA itself indicates that Congress contemplated that the Board could delegate its statutory "power" to the General Counsel. The statute provides that the General Counsel "shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such *other duties* as the Board may prescribe or as may be provided by law." 29 U.S.C. § 153(d) (emphasis added). The phrase "*other* duties" (as opposed to "duties" alone) in the final clause of this sentence implies that the authority described in the first part of the sentence is also a "duty" of the General Counsel. Yet the authority to act "in respect of the investigation of charges and *issuance of complaints under section 160*" allows the General Counsel to exercise delegated "power" of the Board. Section 160(b) provides that whenever it is charged that a person has engaged in an unfair labor practice, the Board "shall have *power to issue* and cause to be served upon such person *a complaint* stating the charges in that respect." *Id.* § 160(b) (emphases added). As § 153(d) contemplates that one of the General Counsel's "duties" is to exercise the Board's "power" to issue complaints, the statute does not unambiguously preclude the Board from delegating other "power" when it prescribes the General Counsel's "other duties" under the same provision. *Cf.*

*NLRB v. C & C Roofing Supply, Inc.*, 569 F.3d 1096, 1098 (9th Cir. 2009) (noting that since 1955, the Board has delegated to the General Counsel, as one of his prescribed duties, the "*power* to petition any court of appeals . . . for the enforcement of [an] order and for appropriate temporary relief or restraining order."  29 U.S.C. § 160(e) (emphasis added)).

Other provisions of the United States Code show that Congress has used the term "duty" to refer to a delegated "power."  In 28 U.S.C. § 547, Congress defined the "duties" of the United States Attorney, which involve the exercise of delegated "executive Power" granted to the President by Article II, Section 1 of the Constitution. In § 7803(b) of the Internal Revenue Code, Congress directed that the Chief Counsel of the IRS "shall perform *such duties* as may be prescribed by the Secretary," including "*the duty*" to do each thing described in subparagraphs (A) through (E) of the section.  26 U.S.C. § 7803(b) (emphases added).  Congress further provided, however, that "[i]f the Secretary determines not to delegate *a power* specified in subparagraph (A), (B), (C), (D), or (E)," such determination may not take effect until a 30-day waiting period expires.  *Id.* (emphasis added).  Under § 7803(b), therefore, Congress contemplated that a "power" of the Secretary could be delegated as one of the "duties" of the Chief Counsel.  *See also* 12 U.S.C. § 2160(b) (defining "Duties" of the Federal Farm Credit Banks Funding Corporation as including the "exercise [of] such other *powers* as were provided to the predecessor Federal Farm Credit Banks Funding Corporation") (emphasis added).

The statutory text thus does not forbid the Board to delegate its power to seek injunctions under Section 10(j).  The Board's interpretation of the statute is not otherwise unreasonable.  Some courts have reasoned that the Board may not delegate its "adjudicatory" power to the General Counsel, *see Evans*, 76 F. Supp. at 889, but insofar as the distinction between "prosecutorial" and "adjudicatory" power is a line of demarcation, the Board reasonably concluded that the power to seek an injunction is prosecutorial.  *See id.* ("If the Board itself were to petition the court for such temporary relief, not only would it be performing a function of a prosecutive nature,

but also it would have considered, ex parte, facts which relate to the very issues upon which the Board must ultimately pass in its quasi-judicial capacity."); Donald J. Siegel, *Section 10(j) of the National Labor Relations Act: Suggested Reforms for an Expanded Use*, 13 B.C. L. Rev. 457, 459 (1972) ("The current procedure gives the Board the unfortunate opportunity both to perform a function of a prosecutive nature and to consider, ex parte, facts relating to issues which ultimately it will have to resolve in a quasi-judicial capacity."). Neither the text nor the structure of the statute establishes that Section 10(j) defines a non-delegable adjudicative power.

With these additional views, I join the opinion of the court.

RILEY, Chief Judge, concurring in part and dissenting in part.

## I. INJUNCTION

I agree the district court's factual findings and conclusions of law are insufficiently specific to support its section 10(j) injunction. See Fed. R. Civ. P. 52(a), 65(d)(1). Section 10(j) injunctions are reserved for "serious and extraordinary" moments when "the remedial purpose of the Act would be frustrated unless immediate action is taken." Sharp v. Parents in Cmty. Action, Inc., 172 F.3d 1034, 1037 (8th Cir. 1999) (quoting Minn. Mining & Mfg. v. Meter, 385 F.2d 265, 270 (8th Cir. 1967) (3M) (internal quotation marks omitted)). The district court's conclusory order fails to explain why "the case presents one of those rare situations in which the delay inherent in completing the adjudicatory process will frustrate the Board's ability to remedy the alleged unfair labor practices." Id. at 1039.

The majority correctly requires the district court on remand to "specially make factual findings, detailing specific actions in the bargaining process and the facts underlying each element of the four-factor injunction test." Ante at 6. The district court's section 10(j) injunction was too broad for several reasons. First, the district court micro-managed the collective bargaining process despite our prior admonition that a section 10(j) injunction is "necessary either to preserve the status quo or prevent

-10-

frustration of the basic remedial purposes of the Act." Sharp, 172 F.3d at 1039 (quoting 3M, 385 F.2d at 270) (internal quotation marks omitted). See also e360 Insight v. Spamhaus Project, 500 F.3d 594, 604-05 (7th Cir. 2007) (holding a district court abused its discretion in issuing an injunction, because the injunction was not narrowly tailored). For example, what irreparable harm would result were the section 10(j) injunction not read aloud "in the presence of all Unit employees" by Whitesell's chief operating officer and human resources director, "or by a [NLRB] agent in the presence of one of those management officials," as the district court ordered. See Sharp, 172 F.3d at 1039 (characterizing "the question of irreparable injury" as a "relatively high hurdle" upon which the district court's "inquiry should focus initially"). As another example, the district court's catch-all order to Whitesell to refrain from "[i]n any like or related manner interfering with, restraining, or coercing any of its employees in the exercise of their right guaranteed under section 7 of the Act" is an impermissible obey-the-law provision. See, e.g., Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1531-32 (11th Cir. 1996) (vacating "obey the law" provision in injunction); Louis W. Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 771-72 (3d Cir. 1994) (similar). The district court's section 10(j) injunction also stems in part from allegations upon which the government is unlikely to prevail. See Sharp, 172 F.3d at 1039 (requiring the district court to "consider likelihood of success on the merits"). After the district court entered its section 10(j) injunction, which granted the General Counsel all the relief he sought, the administrative law judge (ALJ) in the underlying proceedings examined the same record and found the government had not proven many allegations in its complaints. See Bloedorn v. Francisco Foods, Inc., 276 F.3d 270, 286-87 (7th Cir. 2001) (judging the propriety of section 10(j) injunction in the light of an ALJ's subsequent report and recommendation); Seeler v. Trading Port, Inc., 517 F.2d 33, 37 n.7 (2d Cir. 1975) (similar).

## II.    DELEGATION OF AUTHORITY

Though I agree with the majority's view the district court's section 10(j) injunction is fatally flawed, I write separately to express my disagreement with the majority's conclusion that "[t]he Board may delegate § 10(j) authority to the General

Counsel." Ante at 4. The majority ignores the statutory language at issue and offers no analysis for its decision in this regard, except to point out that a handful of other courts over the years have upheld the Board's delegations to the General Counsel. Id. at 3-4. The majority characterizes these courts' opinions as constituting a "long-established interpretation" of the Act. Id. at 4. To the contrary, the Board's eleventh-hour delegation of its section 10(j) power to the General Counsel was an integral part of a recently discredited attempt by the Board "to keep its doors open despite vacancies." New Process Steel, L.P. v. NLRB, 130 S. Ct. 2635, 2638, 2644-45 (2010) (explaining that, faced with an impending loss of a quorum, the Board "decided to take action in an effort to preserve the Board's authority to function," delegating (1) to the General Counsel certain litigation powers "that would normally require case-by-case approval of the Board," and (2) "to . . . a three-member group, all of the Board's powers").

We have an independent obligation to consider the important issue of statutory construction before us. See Furrer v. Brown, 62 F.3d 1092, 1101 (8th Cir. 1995). "As in all such cases, we [must] begin by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" Hardt v. Reliance Std. Life Ins. Co., 130 S. Ct. 2149, 2156 (2010) (quoting Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2350 (2009)). "The Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" United States v. I.L., 614 F.3d 817, 820 (8th Cir. 2010) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)). We are obliged to "look to the particular statutory language at issue, as well as the language and design of the statute as a whole." Id. (quoting Sullivan v. Stroop, 496 U.S. 478, 482 (1990)).

Section 10(j) provides, "***The Board*** shall have ***power***, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j) (emphasis added).

-12-

Congress specifically authorized the Board to delegate its statutory powers in two circumstances.  First, "[t]he Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise."  § 153(b).  This specific authorization to delegate the Board's statutory powers is inapplicable here, because the Board delegated its section 10(j) power to the General Counsel, not three or more of its own members.  Second, "[t]he Board is also authorized to delegate to its regional directors its powers under section 159," which include determining a bargaining unit, finding whether a question of representation affecting commerce exists, and directing an election.  See §§ 153(b), 159.  This specific authorization to delegate the Board's statutory powers also does not apply, because the underlying administrative complaints allege unfair labor practices under section 158, not any purported violation of section 159.

Congress gave the Board power, and the General Counsel acting on behalf of the Board the authority, to issue complaints alleging unfair labor practices:

> Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint.

§ 160(b).

> [The General Counsel] shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law.

§ 153(d).

-13-

Congress specified the powers held by the Board, and the authority and duties of the General Counsel. Congress also specified when the Board may delegate certain powers. Congress plainly did not provide for the Board to delegate its section 10(j) injunctive power to the General Counsel.

The Director argues section 3(d)'s "other **duties** as the Board may prescribe" clause allows the Board to delegate its section 10(j) power to the General Counsel. See § 153(d) (emphasis added). The plain language of the statute refutes the Director's argument. Congress says the Board's ability to seek section 10(j) relief is a "power," not a "duty." § 160(j). "Where," as here, "Congress includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quotation omitted); see Padash v. I.N.S., 358 F.3d 1161, 1169 n.7 (9th Cir. 2004) (quoting SEC v. McCarthy, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a 'well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words,'" and a court "must assume that the difference in usage is legally significant."). I would follow the Supreme Court's well-established canons of statutory construction and "refrain from concluding here that the differing language in the two subsections has the same meaning in each." Russello, 464 U.S. at 23; see, e.g., Werner Enters., Inc. v. MNX Carriers, Inc., 163 F.3d 490, 491 (8th Cir. 1998) (defining "duty" as "an obligation to do a thing" and "right" as "a power or privilege to do a thing," and holding a defendant "cannot simultaneously have the discretionary power to demand a showing of identification and be obligated to demand such a showing").

Where Congress wanted to give the General Counsel, through the regional directors, the authority to seek injunctive relief in the district court, it did so expressly. A companion section, section 10(l), provides that when the unfair labor practice charged is a secondary boycott or certain strikes, the officer or regional attorney "shall, on behalf of the Board, petition [the] district court . . . for appropriate

injunctive relief pending the final adjudication of the Board with respect to such matter." § 160(l). Section 10(l) thus requires the regional director to petition the district court when specific types of unfair labor practices are alleged. In contrast, section 10(j) gives the power to seek an injunction only to the Board when other types of unfair labor practices are alleged. See Gottfried v. Frankel, 818 F.2d 485, 492 (6th Cir. 1987) ("We believe that the language in section 10(*l*) was intended to allow a Regional Director to obtain injunctive relief without Board approval when filing for injunctive relief is mandatory under the NLRA. In contrast, the Board has discretion as to whether a section 10(j) petition will be filed; in such a circumstance, the Board must approve the filing of a section 10(j) petition.").

As discussed in Part I above, "§ 10(j) is a limited exception to the federal policy against labor injunctions," and "is reserved for 'serious and extraordinary' cases when 'the remedial purpose of the Act would be frustrated unless immediate action is taken.'" Sharp, 172 F.3d at 1037 (quoting 3M, 385 F.2d at 270). Because a temporary injunction under section 10(j) is an extraordinary remedy that is meant to be afforded sparingly, and Congress gave the power to seek it only to the Board, the Board may not delegate that power. Compare Lewis v. NLRB, 357 U.S. 10, 14-15 (1958) (deciding the Board's obligation to issue subpoenas could be delegated to regional directors because it is a ministerial act requiring no exercise of discretion), and NLRB v. Duval Jewelry Co. of Miami, Inc., 357 U.S. 1, 6-8 (1958) (concluding the Board can delegate the preliminary ruling on a motion to revoke subpoena to a regional director or hearing officer because the Board retains the final decision on appeal), with Cudahy Packing Co. of La., Ltd. v. Holland, 315 U.S. 357, 364 (1942) (declining to infer authority to delegate the administrator of the Wage and Hour Division of the Department of Labor's statutory power to sign and issue a subpoena duces tecum, stating "it seems to us fairly inferable that the grant of authority to delegate the power of inspection and the omission of the authority to delegate the subpoena power shows a legislative intention to withhold the latter"), and United States v. Giordano, 416 U.S. 505, 514 (1974) (declaring that the Attorney General could not delegate his wiretapping authorization power to his executive assistant

-15-

where "the matter of delegation is expressly addressed by [18 U.S.C.] § 2516, and the power of the Attorney General in this respect is specifically limited to delegating his authority to 'any Assistant Attorney General specially designated by the Attorney General'"). See also Halverson v. Slater, 129 F.3d 180, 184-85 (D.C. Cir. 1997) (holding the Secretary of the Department of Transportation could not delegate the Great Lakes Pilotage Act (GLPA) "duties and powers" to an officer or employee of the Department of Transportation, where the statute contains a specific grant of GLPA "duties and powers" to the Coast Guard officials only).

Instead of grappling with the relevant statutory language, the majority stresses "[f]or more than sixty years, district courts have upheld such delegations" and "[c]ourts of appeals have upheld the 2007 delegation at issue here." Ante at 3-4. I do not find these non-precedential cases persuasive.

In Evans v. Int'l Typographical Union, 76 F. Supp. 881, 888-89 (S.D. Ind. 1948), the district court relied on the "such other duties as the Board may prescribe" language of section 3(d) in concluding the Board may delegate to the General Counsel "functions other than those specifically committed to him by statute." While I agree the "other duties" clause would be "superfluous" if it only allowed the Board to delegate functions the General Counsel already may perform, that does not lead to the conclusion that "other duties" includes the "power" to petition the district court under section 10(j). See id. at 889. The power to petition the district court to enjoin the alleged unfair labor practices during the entire pendency of the Board's adjudicative process is significant, and is not akin to whatever "other duties" the Board may assign to the General Counsel.

The court in Evans also concluded that the power to seek injunctive relief under section 10(j) was delegable because "[i]t is not unreasonable to assume that Congress intended that the Board might delegate to the General Counsel duties equal in importance" with the General Counsel's statutory authority to issue and prosecute complaints. Id. This statement equates the terms "powers" and "duties,"

-16-

contradicting the different words Congress expressly used. Further, the General Counsel's power to prosecute complaints is "before the Board." § 153(d). Conversely, the power to seek temporary injunctive relief is before the district court, and is therefore not so analogous that a court should assume they go hand-in-hand.

Finally, the Evans court stated the Board could not "properly delegate its functions of a judicial nature," because that would undermine "the purpose and policy of Congress to separate the judicial functions of the Board from any prosecutive or investigative function." Evans, 76 F. Supp. at 889. The court then reasoned that, because seeking section 10(j) relief is more prosecutorial than judicial, the Board's delegation of that power to the General Counsel would not upset any separation of powers within the agency. Id. Courts following the Evans decision generally adopt this part of its holding without analysis. See, e.g., Madden v. Int'l Union, United Mine Workers of Am., 79 F. Supp. 616, 617 (D.D.C. 1948) (adopting Evans without discussion); Penello v. Int'l Union, United Mine Workers of Am., 88 F. Supp. 935, 937 (D.D.C. 1950) (similar); Glasser v. Heartland–Univ. of Livonia, Mich., LLC, 632 F. Supp. 2d 659, 662 (E.D. Mich. 2009) (similar).

In Muffley v. Spartan Mining Co, 570 F.3d 534 (4th Cir. 2009), for example, the employer "equat[ed] 'duties' with prosecutorial functions and 'power' with adjudicative functions, and then relie[d] on the general rule that although the Board may delegate *prosecutorial* functions to the General Counsel, it may not assign away its core *adjudicative* functions." Muffley, 570 F.3d at 540. The Fourth Circuit stated: "The central question, then, is whether the ability to seek § 10(j) relief is prosecutorial or adjudicative in nature." Id. The court concluded that seeking section 10(j) relief is prosecutorial because "[w]hether the Board or the General Counsel petitions a district court for relief, the adjudicative function—the ultimate decision to grant relief—lies with the district court." Id.

As Whitesell suggests, the "central question is whether Congress authorized the Board to delegate its *powers* under § 10(j), not whether those *powers* are prosecutorial

or judicial." To the extent any distinction between prosecutorial and adjudicative functions is pertinent, the line of demarcation in Evans is poorly drawn.

Section 10(j) was enacted as part of the Labor Management Relations Act of 1947 (LMRA), the "Taft-Hartley" Act. See Muniz v. Hoffman, 422 U.S. 454, 462 (1975). "The words, structure, and history of the LMRA amendments to the NLRA clearly reveal that Congress intended to differentiate between the General Counsel's and the Board's 'final authority' along a prosecutorial versus adjudicatory line." NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO, 484 U.S. 112, 124 (1987). But the purpose of the section 10(j) remedy is to protect the Board's adjudicatory process, see Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1188 (5th Cir. 1975), and Congress gave the power to seek section 10(j) relief to the Board. Conversely, the General Counsel's prosecutorial authority is specifically provided by section 3(d): the General Counsel has final authority to prosecute complaints "before the Board," in addition to investigating charges and issuing complaints. § 153(d). While it is the district court that grants section 10(j) relief, it does so only when the Board's ability to remedy the alleged unfair labor practices would be frustrated by the delay in the Board's adjudicatory process. See Sharp, 172 F.3d at 1039; Boire, 515 F.2d at 1188. And as discussed, Congress called this function a "power," not a "duty." Thus, contrary to the Fourth Circuit, I conclude that seeking section 10(j) relief is part of the Board's adjudicatory power and may not be delegated to the General Counsel.

The Director also argues that Congress expressed its intent to allow section 10(j) relief to be delegated to the General Counsel by not amending the language in section 3(d) despite the courts approving such delegation. See Lorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). Congress has not changed the controlling language of section 3(d) since its enactment in 1947. "[W]hen, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments,

-18-

[the Supreme Court has] spoken more bluntly: 'It is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the Court's statutory interpretation.'" Alexander v. Sandoval, 532 U.S. 275, 292 (2001) (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 175, n.1 (1989)).

The Board and General Counsel are creatures of statute, and ours is a nation of laws not bureaucrats. Because Congress gave section 10(j) power only to the Board, the General Counsel cannot exercise this power unless Congress provides for its delegation. "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984). The Board could not lawfully delegate its section 10(j) power to the General Counsel, and thus the district court lacked jurisdiction to consider the General Counsel's request for a section 10(j) injunction.

## III.   LOSS OF QUORUM

Even if the Board could lawfully delegate its section 10(j) power to the General Counsel, the Board's subsequent loss of a quorum precluded the General Counsel from seeking the injunction in this case. As the majority recognizes, see ante at 4, our sister circuit courts of appeals are divided on this question. Compare Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F.3d 469, 472-76 (D.C. Cir. 2009), with Overstreet v. El Paso Disposal, L.P., 625 F.3d 844, 852-54 (5th Cir. 2010). The majority favors the Fifth Circuit's conclusion in El Paso Disposal that (1) "the Supreme Court declined to endorse the D.C. Circuit's position" in New Process Steel, 130 S. Ct. at 2642 n.4, and (2) "[t]he Fifth Circuit's conclusion fits within the administrative scheme of the [Act]." Ante at 4. The majority reasons Congress "determined that the General Counsel of the Board should be independent of the Board's supervision and review." Id. (quoting United Food & Commercial Workers Union, 484 U.S. at 118) (alteration omitted).

-19-

I respectfully disagree with the majority's choice of sides in the circuit split and would join the D.C. Circuit's decision in Laurel Baye. By its terms, New Process Steel "does not address" whether the Board's loss of a quorum precludes the General Counsel from seeking a section 10(j) injunction if a prior delegation by the Board is otherwise valid. New Process Steel, 130 S. Ct. at 2642 n.4. The mere fact the Supreme Court declined to endorse the D.C. Circuit's view that "[t]he delegee group's delegated power to act . . . ceases when the Board's membership dips below the Board quorum of three members," id., is immaterial. Cf. Hopfmann v. Connolly, 471 U.S. 459, 460-61 (1985) (per curiam) (explaining that questions the Supreme Court does not decide cannot be precedential). And the general maxim that "the General Counsel . . . should be independent of the Board's supervision and review" does not compel the majority's conclusion that a delegated power survives the delegator's loss of a quorum.

The Fifth Circuit's conclusion that "[t]he fact that Board membership subsequently dipped below a quorum does not retroactively invalidate the Board's prior delegation," El Paso Disposal, 625 F.3d at 853, overstates the matter. The question is not whether the loss of a quorum, in some metaphysical sense, "retroactively invalidate[s]" the prior delegation; the issue is whether the legal effect of the prior delegation terminates at the moment the Board loses its lawful power to act.

When the issue is properly framed, the Fifth Circuit's conclusion is inconsistent with well-settled principles of agency law. As the D.C. Circuit explained in Laurel Baye,

> an agent's delegated authority terminates when the powers belonging to the entity that bestowed the authority are suspended. Restatement (Third) of Agency § 3.07(4) (2006). An agent's delegated authority is also deemed to cease upon the resignation or termination of the delegating authority. 2 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 504 (2008); see Emerson v. Fisher, 246 F.

-20-

642, 648 (1st Cir. 1918) (holding that a corporate treasurer's resignation terminated any authority delegated by the treasurer to other individuals). Moreover, as Fletcher notes, a delegating board of directors's powers are suspended whenever the board's membership falls below a quorum. See 2 Fletcher Cyclopedia of the Law of Corporations § 421 ("If there are fewer than the minimum number of directors required by statute, [the remaining directors] cannot act as a board."). In the context of a board-like entity, a delegee's authority therefore ceases the moment that vacancies or disqualifications on the board reduce the board's membership below a quorum. It must be remembered that the delegee committee does not act on its own behalf.

Laurel Baye, 564 F.3d at 473. See also Long v. Thayer, 150 U.S. (1 Wall.) 520, 522 (1870) (recognizing the principle that an agent's power ceases upon the principal's death); Galt v. Galloway, 29 U.S. (1 Pet.) 332, 344 (1830) (same); Hunt v. Rousmanier's Adm'rs, 21 U.S. (1 Wheat.) 174, 201-03 (1823) (Marshall, C.J.) (similar). The General Counsel, as delegatee, lost its power to petition the district court for a section 10(j) injunction the moment the Board, the delegator, lost its quorum.

Because the General Counsel lacked power to petition the district court for the section 10(j) injunction once the Board lost its quorum, the district court's injunction must be vacated. Contravening the spirit, if not the letter, of New Process Steel, 130 S. Ct. at 2645, the majority incorrectly permits the "Board to create a tail that would not only wag the dog, but would continue to wag after the dog died."

## IV. CONCLUSION

I concur in part and dissent in part. I agree the district court's factual findings and conclusions of law are insufficiently specific to support its section 10(j) injunction. I disagree that the General Counsel possessed the power to petition the district court for a section 10(j) injunction. The Board's creative attempt to expand its power through the General Counsel should be rejected. See New Process Steel, 130 S. Ct. at 2638.

_____

## APPENDIX A

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## SUPPORTING TEMPORARY INJUNCTION

On August 5, 2009, the court received the Administrative Record, stipulated by the parties, and oral argument on the Petitioner NLRB's motion for injunctive relief, resisted by Respondent Whitesell Corporation (Whitesell). The NLRB seeks an order requiring Whitesell pursuant to section 10 (j) of the National Labor Relations Act (Act) to cease engaging in unfair labor practice activities.

About two and one-half years ago, this court after a hearing enjoined Whitesell from engaging in the unfair labor practices that were heard by Administrative Law Judge (ALJ) Bruce D. Rosenstein.[1]

Now before the court is the record made before ALJ Paul Bogas in Des Moines on June 1-4, 2009. Three complaints were consolidated for hearing, but several other complaints asserted by the union did not survive the Regional Director's scrutiny. Based on the record before me and the oral and written arguments of counsel, the court now concludes that the evidence proves Whitesell has engaged in acts and conduct that violates section 8 (a)(1) and (5) of the Act; this affects commerce; and Whitesell will likely repeat this conduct unless it is enjoined. This is an extraordinary case where the delay inherent in completing the adjudicatory process will frustrate the NLRB's ability to remedy Whitesell's unfair labor practices. See Sharp v. Parents in Community Action, Inc., 172 F.3d 1034, 1037-39 (8th Cir. 1999).

---

[1]The NLRB decision based on that ALJ's findings and conclusions presently is before the United States Court of Appeals for the Eighth Circuit, but no decision has been issued yet.

The court finds Whitesell prematurely declared an impasse in negotiations, engaged in regressive bargaining, refused union requests for information, improperly unilaterally altered the workers' benefits and working conditions, and attempted to undermine the employees' confidence in their union and its representatives.

Whitesell's plea that adverse market conditions and loss of a major customer drove its actions is not credible. Whitesell's accusations about union representatives' bad faith bargaining are also not supported in this large record concerning the more recent Whitesell conduct during and after bargaining sessions that have adversely affected the employees and the union.

Applying the four factor test articulated in <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981), the court concludes Whitesell's employees and their union will sustain irreparable harm if no injunction issues; Whitesell will sustain no harm if enjoined to cease its unfair labor practices; the public interest will be served by enjoining the wrongful conduct; and the union and employees are likely to prevail once the adjudicatory processes are completed. Equities entirely favor granting the Petitioner's request for immediate injunctive relief.

Therefore the court now enters its ORDER GRANTING INJUNCTION, filed herewith.

IT IS SO ORDERED.

Dated this 11th day of September, 2009.

# APPENDIX B

## *James River Flood Control Ass'n et al. v. Watt et al.*
## Civil No. 81-1012 (D.S.D. May 18, 1982)

## ORDER

Upon all the evidence presented at trial, the Court finds

(1)  that there is a very substantial question of law present in this case, and a substantial likelihood of success on the merits on both of plaintiffs' causes of action;

(2)  that there is a substantial probability that if the challenged project is allowed to go forward, plaintiffs' present interests in the proper compliance by defendants with the provisions of the National Environmental Policy Act (NEPA) will be irreparably harmed by construction of a project which is likely in violation of NEPA;

(3)  that the public interest will also be severely harmed if construction of the challenged project proceeds in spite of defendants' likely violations of NEPA and other federal statutes in that any funds spent by defendants on the prosecution of an illegal project will be irretrievably lost;

(4)  that in view of the probability of harm to plaintiffs' interests and the public interest, any injury accruing to defendants by the enjoining of the project during the pendency of this case is outweighed by the probability of harm to the plaintiffs and to the public interest, it is therefore

ORDERED that defendants are hereby enjoined from any acquisition of land and construction in the West Oakes area, initial stage of the Garrison Diversion Unit, during the pendency of this action or until further Order of this Court.

Dated May 18, 1982.