MILWAUKEE AND SOUTHEAST WIS-
CONSIN DISTRICT COUNCIL OF
CARPENTERS, Plaintiff–Appellant,

v.

ROWLEY–SCHLIMGEN, INC.,
Defendant–Appellee.

No. 92–2566.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1993.

Decided Aug. 17, 1993.

Matthew R. Robbins (argued), Naomi
Eispman, Previant, Goldberg, Uelman, Gratz,
Miller & Brueggeman, Milwaukee, WI, for
plaintiff-appellant.

Jack D. Walker (argued), Dana J. Erland-
sen, Melli, Walker, Pease & Ruhly, Madison,
WI, for defendant-appellee.

Before CUDAHY, POSNER and
RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Rowley–Schlimgen, Inc. (Rowley) and the
Milwaukee and Southeast Wisconsin District
Council of Carpenters (the Union) are parties
to a collective bargaining agreement (CBA).
The CBA specifies that Rowley may hire
only subcontractors that are "signatory to an
agreement with the Greater Wisconsin Car-
penters Bargaining Unit," § 14.01(a), and
provides for binding arbitration of all dis-
putes or complaints arising under it. Several
such disputes arose after the Union learned
that Rowley had engaged carpet installers
that were not signatory to a collective bar-
gaining agreement. The Union filed a griev-
ance and invoked the CBA's arbitration pro-
vision. When Rowley refused to proceed to
arbitration, the Union brought this suit pur-
suant to § 301 of the National Labor Rela-
tions Act (NLRA), 29 U.S.C. § 185.

Rowley moved the district court for sum-
mary judgment, arguing that the CBA's "sig-
natory clause" is illegal and thus void. Spe-
cifically, Rowley asserts that it violates 29
U.S.C. § 158(e), which provides, in pertinent
part, as follows:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement ... whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement into ... containing such an agreement shall be to such extent unenforceible [sic] and void: *Provided,* That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of construction, alteration, painting, or repair of a building, structure, or other work....

The Union concedes that the signatory clause is void under § 158(e) unless Rowley is "an employer in the construction industry."

Rowley is in the business of selling office furniture, office equipment, wallcoverings and flooring, including carpeting. When one of Rowley's customers requires that its carpet purchase be installed, as is usually the case, Rowley hires an installation company to do the work since it does not presently employ any carpet installers. Rowley chooses the subcontractor, negotiates the cost of installation and later inspects the site to make sure that the job has been properly performed. R.O.A. 19 at 32–35, 38 (Deposition of Edward Rowley). Less than nine percent of Rowley's gross sales, and less than four percent of its gross profits, come from the sale of carpeting. R.O.A. 13 at ¶ 4 (Affidavit of Edward Rowley). Nevertheless, Rowley competes for the installation of flooring on some of the largest construction projects in Madison, Wisconsin. R.O.A. 22 at ¶ 5 (Affidavit of Gregory Sefcik).

The district court found that Rowley's "principal business is the sale of office furniture" and that "subcontracting for carpet installation ... is a minor part of a minor part of [Rowley's] business." *Milwaukee*

*and S.E. Wis. Dist. Council of Carpenters v. Rowley–Schlimgen, Inc.,* No. 91–C–932–S, slip op. at 6 (W.D.Wis. June 2, 1992). This, coupled with the fact that Rowley employs no carpet installers directly, led the court to conclude that Rowley is not "in the construction industry under any reasonable interpretation of the phrase." *Id.* The court also observed that, because the § 158(e) exception is expressly limited to work done at a construction site, the phrase, "employer in the construction industry," must require something more than "any participation in construction." *Id.* at 7. Finally, the district court distinguished certain cases upon which the Union relied on the theory that even though the employers in those cases were, like Rowley, engaged primarily in an industry other than construction, they were, unlike Rowley, acting as "general contractor[s] for one or more construction projects."[1] *Id.* at 8. The Union appeals. We vacate and remand for further proceedings.

■ The signatory clause in the CBA is a type of "hot cargo" clause. "Hot cargo" in labor law generally refers to goods or products made by nonunion employees or by employers who are considered "unfair" to organized labor, but the appellation "hot cargo clause" may also be attached to provisions, such as the signatory clause here, that prohibit an employer from dealing with other employers that hire nonunion workers. Theodore Kheel, Labor Law § 39.01 at 39–1 to 39–2 & n. 2 (1989). Section 158(e), enacted as part of the 1959 Landrum–Griffin amendments to the NLRA, generally bans such provisions by making entry into them an unfair labor practice as well as by pronouncing them "unenforceable and void." Section 158(e) includes, however, the so-called "construction industry proviso," which places hot cargo agreements between unions and employers "in the construction industry" beyond the reach of the statute. Somewhat surprisingly, what characteristics place an employer "in the construction industry" for purposes of the § 158(e) proviso appears to be a matter of first impression not only in

---

1. Because the district court held that Rowley was not an "employer in the construction industry," it did not reach the question of whether the instances in which Rowley selected nonunion installation subcontractors involved work to be done "at the site of construction, alteration, painting, or repair of a building."

this circuit but elsewhere at the judicial level as well. The parties have not cited, nor has our research disclosed, any court case squarely addressing this question. We are left, therefore, to base our decision on the factors that led Congress to enact this exemption, *see Woelke & Romero Framing, Inc. v. N.L.R.B.*, 456 U.S. 645, 653, 102 S.Ct. 2071, 2077, 72 L.Ed.2d 398 (1982) (construction industry proviso must be "interpreted in light of the statutory setting and circumstances surrounding its enactment"). We are also guided by relevant decisions of the National Labor Relations Board (NLRB or the Board), the agency charged generally with enforcing the NLRA.

Not unexpectedly, the legislative history surrounding the § 158(e) exemption in favor of the construction industry is vague and inconclusive. In fact, we cannot find in the legislative record any clearly articulated reason for the inclusion of the construction industry proviso. All that seems clear is that Congress intended to preserve the status quo in that industry at the time it adopted the Landrum–Griffin amendments. *See, e.g.*, 105 Cong.Rec. 17900 (1959) (statement of Sen. Kennedy) ("The [construction industry proviso] is intended to preserve the present state of the law with respect . . . to the validity of agreements relating to the contracting of work to be done at the site of the construction project."). Nevertheless, numerous courts and commentators have concluded, on the basis of this scant evidence, that the construction industry proviso exists because of an "underlying congressional concern with minimizing jobsite tension." *Acco Constr. Equip. v. N.L.R.B.*, 511 F.2d 848, 851 (9th Cir.1975). *See also Local 210, Laborers' Int'l Union of N. America v. Labor Relations Div.*, 844 F.2d 69, 76 (2d Cir.1988); *Drivers, Salesmen, Warehousemen, etc., Local Union No. 695 v. N.L.R.B.*, 361 F.2d 547, 553 (D.C.Cir.1966); *Essex County and Vicinity Dist. Council of Carpenters and Millwrights v. N.L.R.B.*, 332 F.2d 636, 640 (3d Cir.1964); *Kheel, supra*, at § 39.02[1]; James A. Dobkin, Comment, *Hot Cargo Agreements Under the National Labor Relations Act: An Analysis of Section 8(e)*, 38 N.Y.U.L.Rev. 97, 111 (1963). The Supreme Court has recently observed that the construction industry proviso was also included in order to accommodate conditions specific to the construction industry such as the short-term nature of construction employment. *Building and Constr. Trades Council of the Metro. Dist. v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.*, —— U.S. ——, ——, 113 S.Ct. 1190, 1198, 122 L.Ed.2d 565 (1993) (citing S.Rep. No. 187, 86th Cong., 1st Sess., 28, 55–56 (1959) & H.R.Rep. No. 741, 86th Cong., 1st Sess., 19–20 (1959)). This condition makes post-hire collective bargaining nearly impossible. Another circumstance requiring accommodation is the need of construction employers for predictable costs and for a steady supply of skilled labor. *Id.* The NLRB has credited these objectives in adopting a rather expansive definition of "employer in the construction industry."

In turning to the applicable decisions of the NLRB, we must bear in mind that Rowley contends it is not in the construction industry (more specifically, the carpet installation industry) because such a small portion of its sales and profits derive from such activity. In *Los Angeles Bldg. and Constr. Trades Council (Church's Fried Chicken)*, 183 N.L.R.B. 1032, 1036 (1970), the NLRB rejected an analogous position, stating that the legislative history tended "to indicate that Congress was concerned with the agreements relating to the subcontracting of work on the construction site rather than the nature of the primary business of the 'contractor.'" The NLRB contrasted the construction industry proviso in § 158(e) with a similar provision in § 158(f), which permits prehire labor agreements in the construction industry. Section 158(f) applies only to employers "engaged primarily in the building and construction industry." The Board found it significant that Congress omitted the word "primarily" from the construction industry proviso in § 158(e). The NLRB concluded that in so doing Congress must have intended "to broaden the category beyond those primarily in the construction industry." *Id.* at 1037. Thus, the Board held that Church's Fried Chicken, although primarily in the business of selling chicken through its retail stores, was engaged "in the construction industry" to the extent that it functioned

as its own general contractor in the "continuing operation of building stores." *Id.* Church's primary business was deemed "immaterial." *Id.*

The NLRB took a similar tack in *United Bhd. of Carpenters and Joiners of America (Longs Drug Stores, Inc.),* 278 N.L.R.B. 440, 1986 WL 54111 (1986). There the Board reiterated that whether an employer is "in the construction industry" within the meaning of § 158(e) is "dependent on the circumstances of each situation, rather than on the principal business of the employer" and turns upon the "degree of control over the construction-site labor relations it elects to retain." *Id.* at 442. Like Church's Fried Chicken, the primary business of Longs Drug Stores was retail sales and its only link to the construction industry was its involvement in the building of its own stores. But, unlike Church's, Longs' only direct involvement with onsite labor relations was its use of some of its own construction employees for a limited purpose (the installation of fixtures) in the final two weeks of an eight-month project. *Id.* Other than this, Longs' only construction-related activity consisted of "sporadic visits to the jobsite by [its] project manager ... simply for the purpose of insuring that the work being done was in compliance with the plans and specifications." *Id.* This was not enough, the Board held, to bring Longs within the coverage of the construction industry proviso.

*Chicago Dist. Council of Carpenters (Polk Bros., Inc.),* 275 N.L.R.B. 294, 1985 WL 45664 (1985), upon which Rowley places great emphasis, is a troubling case. Factually, it is very similar to the present situation. Polk Bros. sold home appliances, furniture and carpeting, and included installation in its sale of carpet. *Id.* at 294. Polk Bros. was party to a collective bargaining agreement that contained a signatory clause, which, the contracting union agreed, violated § 158(e) unless the construction industry proviso applied. In deciding whether Polk Bros. was an "employer in the construction industry," the Board deviated from the approach it took in *Church's Fried Chicken.* Relying on cases interpreting § 158(f), it concluded that only businesses that "devote their facilities, time, effort, and funds principally to contract construction" are "employers in the construction industry" under the § 158(e) proviso. *Id.* at 296 (quoting *Carpet, Linoleum and Soft Tile Union No. 1247, etc. (Indio Paint and Rug Center),* 156 N.L.R.B. 951 (1956)). The Board concluded that Polk Bros. did not commit enough of its resources to carpet installation, which the Board presumed to be a construction activity, to qualify as a § 158(e) "employer in the construction industry." To buttress this finding, the Board observed that Polk Bros. fitted the Statistical Industrial Classification Manual's description of "home furnishing and equipment stores" better than the description of "carpet laying or removal service contractors." Rowley makes a similar observation regarding its own operations.

In essence, the NLRB in *Polk Bros.* equated § 158(e) with § 158(f). But the Board had earlier explicitly rejected this equivalency in *Church's Fried Chicken.* Moreover, in *Longs Drug Stores,* which was decided after *Polk Bros.,* the Board, without mentioning *Polk Bros.,* returned to the analytic approach articulated in *Church's Fried Chicken.* Viewed in this context, *Polk Bros.* appears to be something of an aberration. Although this aspect alone may not be a sufficient reason to disregard it, we believe that it is of little precedential value. The Board in *Polk Bros.* failed to explain its apparently illogical break with *Church's Fried Chicken;* indeed, it did not even cite, much less discuss, its prior decision. "[W]hen the NLRB 'fails to distinguish contradictory decisions rendered in similar cases,' it forfeits 'the deference we would otherwise show to its very considerable expertise in strictly labor matters.' " *Shaw's Supermarkets, Inc. v. NLRB,* 884 F.2d 34, 37 (1st Cir.1989) (quoting *Local 777, Democratic Union Organizing Comm. v. NLRB,* 603 F.2d 862, 871–72 (D.C.Cir.1978)). *See also Blankenship and Assocs., Inc. v. N.L.R.B.,* 999 F.2d 248, 251 (7th Cir.1993) (noting that NLRB must explain why it is departing from its previous decisions). Additionally, the Board's return in *Longs Drug Stores* to the approach articulated in *Church's Fried Chicken* counsels that the

approach adopted in those cases is the proper view.

Rowley contends that these decisions may be reconciled. It argues that *Church's Fried Chicken* and *Longs Drug Stores* should apply only to those cases in which an employer is allegedly acting as its own general construction contractor and that *Polk Bros.*, along with a host of other decisions under § 158(f),[2] should govern when, as here, an employer sometimes hires a subcontractor to install goods that it sells. Although this attempt at harmonization is reasonable, it is not compelling. The availability of § 158(e)'s exemption in favor of the construction industry must be driven by its purposes: the desire to reduce construction site tensions and the development of a uniform and ready supply of skilled labor. Accordingly, we conclude that whenever an employer is able to determine the nature of the workers who will be employed at a construction site through its selection of a subcontractor, the employer is, to that extent, an "employer in the construction industry" within the meaning of § 158(e)'s construction industry proviso.

Because the district court's decision was tied to the *Polk Bros.* analysis that we reject, it cannot stand. We remand the case to the district court to determine, in the first instance, whether Rowley is an employer "in the construction industry" under the standard just announced. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (federal appellate court will generally not consider an issue not passed upon below). Also, the district court will have to decide, again in the first instance, whether the particular matters of which the Union complains involved work at a construction site. It is not entirely clear that all locations at which carpet is being installed are, in fact, construction sites.

VACATED AND REMANDED.

**2.** These are: *A.L. Adams Constr. Co. v. Georgia Power Co.,* 733 F.2d 853 (11th Cir.1984), *cert. denied,* 471 U.S. 1075, 105 S.Ct. 2155, 85 L.Ed.2d 511 (1985); *Zidell Explorations, Inc.,* 175 N.L.R.B. 887 (1969); *Carpet, Linoleum and Soft Tile Local Union No. 1247, etc. (Indio Paint and Rug Center),* 156 N.L.R.B. 951 (1966); *Frick Co.,* 141 N.L.R.B. 1204 (1963).