# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1285

_____

| | |
|---|---|
| Ronald M. Sharp, Regional Director of the National Labor Relations Board, | * * * |
| Petitioner - Appellant, | * Appeal from the United States |
| | * District Court for the |
| v. | * District of Minnesota. |
| | * |
| Parents In Community Action, Inc., | * * |
| Respondent - Appellee. | * |

_____

Submitted:  November 19, 1998

Filed:  April 1, 1999

_____

Before BOWMAN, Chief Judge, LOKEN, Circuit Judge, and HAND,[*] District Judge.

_____

LOKEN, Circuit Judge.

The Regional Director of the National Labor Relations Board ("the Board") appeals the district court's[1] denial of a preliminary injunction under § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), prohibiting Parents In Community

_____

[*]The HONORABLE WILLIAM BREVARD HAND, United States District Judge for the Southern District of Alabama, sitting by designation.

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

Action ("PICA") from interfering with employees' protected rights during a union organizing campaign and reinstating a discharged union activist. We affirm.

PICA is a nonprofit corporation providing Head Start education and day care services to Hennepin County (Minneapolis), Minnesota. In late 1996, the Minnesota Federation of Teachers (the "Union") sought to organize PICA's 270 employees. Jan Radder, a head teacher at one of PICA's seven centers, was a leader in the Union's organizing campaign. After PICA discharged Radder on March 7, 1997, the Union filed a charge with the Board, alleging PICA had violated §§ 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3), by scheduling an employee meeting to conflict with a union meeting, granting an across-the-board pay increase, limiting the distribution of union literature, monitoring employee union activities, interrogating and threatening employees, and disciplining and discharging Radder because of his union activity. The Board's General Counsel issued a Complaint and Notice of Hearing on May 16, 1997.

The Union hired Radder to assist in organizing an election for PICA employees, and he continued his organizing efforts. By the end of the 1996-97 school year, the Union had only 62 signed authorization cards. According to a Radder affidavit, "we decided that we would suspend organization efforts during the summer and try to begin anew in the fall." In late August, the Board petitioned the district court for a preliminary injunction. The district court held a hearing on October 1 and issued its final order denying an injunction on November 12. The record is silent as to whether the Union resumed its organizing campaign in the 1997-98 school year or thereafter. On July 15, 1998, the Board's administrative law judge issued his recommended decision on the General Counsel's complaint.

## I. The Proper Legal Standard.

Section 10(j) authorizes the Board to seek, and a district court to grant, "such temporary relief or restraining order as [the court] deems just and proper." First

enacted in 1947, § 10(j) is a limited exception to the federal policy against labor injunctions. It is reserved for "serious and extraordinary" cases when "the remedial purpose of the Act would be frustrated unless immediate action is taken." Minnesota Mining & Mfg. Co. v. Meter, 385 F.2d 265, 270 (8th Cir. 1967) ("3M").

On appeal, the Board argues the district court applied the wrong legal standard in denying a preliminary injunction. After surveying recent decisions by other courts, the district court concluded it should apply our normal preliminary injunction standard as articulated in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc),[2] rather than the two-part test most circuits have applied in § 10(j) cases, which asks whether there is "reasonable cause" to believe the Act was violated, and whether issuing the injunction would be "just and proper." See Solien v. Merchants Home Delivery Serv., Inc., 557 F.2d 622, 626 (8th Cir. 1977).

A number of circuits have labored over this issue in recent years. The question is not whether traditional equitable principles are relevant. When a federal statute authorizes injunctive relief, the presumption is that Congress intends the courts to exercise their traditional equitable discretion. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-20 (1982). Thus, the Board properly concedes that the reference to "just and proper" in § 10(j) incorporates traditional equitable principles. But the Board objects to applying our Dataphase standard. In the Board's view, requiring it to show a likelihood of success on the merits gives too little deference to the agency's interpretation of the facts and the inferences to be drawn from the facts. Therefore, the proper standard asks only whether the Board's General Counsel had "reasonable

---

[2]Under Dataphase, in deciding whether to grant or deny a preliminary injunction, the district court weighs 1) the threat of irreparable harm to the movant; 2) the balance between the harm to the movant and the harm to other parties if the injunction is granted; 3) the movant's probability of success on the merits; and 4) the public interest. See 640 F.2d at 113.

cause" to issue a complaint and to seek a preliminary injunction. However, as at least three circuits have noted, the "reasonable cause" aspect of the Board's test is flawed. That term is found in § 10(l) of the Act, but not in § 10(j), and there are significant procedural differences in the two sections. Moreover, a deferential review of whether the General Counsel had reasonable cause to issue a complaint and seek a preliminary injunction adds little to the analysis of whether a § 10(j) injunction should issue. See Pye v. Sullivan Bros. Printers, Inc., 38 F.3d 58, 64 n.7 (1st Cir. 1994); Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456-59 (9th Cir. 1994) (en banc); Kinney v. Pioneer Press, 881 F.2d 485, 489-91(7th Cir. 1989).

In our view, the significance of this theoretical debate diminishes when one recalls the flexibility inherent in traditional equitable principles. The Dataphase factors are not a rigid formula. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959). The exercise of equitable discretion under § 10(j) must further Congress's remedial purpose in authorizing preliminary injunctions against *suspected* statutory violations. Thus, the irreparable harm to be addressed under § 10(j) is the harm to the collective bargaining process or to other protected employee activities if a remedy must await the Board's full adjudicatory process. Our decision in 3M reflects that kind of careful application of traditional equitable principles to the context of a § 10(j) preliminary injunction.[3] The question in each case is whether

_____

[3]Our opinions applying § 10(l) contain language suggesting that if the Board shows the "reasonable cause" referred to in that statute, traditional equitable principles need not be examined to determine if injunctive relief would be "just and proper." See Solien v. United Steelworkers of Am., 593 F.2d 82, 87 (8th Cir.), cert. denied, 444 U.S. 828 (1979); Hendrix v. Amalgamated Meat Cutters Local 340, 555 F.2d 175, 178 (8th Cir. 1977); Wilson v. Milk Drivers Local 471, 491 F.2d 200, 203 (8th Cir. 1974). After Romero-Barcelo, it would be inappropriate to rely upon that language without carefully considering the facts of those cases and the equitable considerations typically relevant to § 10(l) injunctions. Likewise, the discussion of § 10(j) and § 10(l) in Burlington

the extraordinary remedy of a preliminary injunction is "necessary either to preserve the status quo or to prevent frustration of the basic remedial purpose of the Act." 385 F.2d at 270.

In deciding whether a § 10(j) injunction would be "just and proper" under traditional equitable principles as applied in 3M, the inquiry should focus initially on the question of irreparable injury -- whether the Board has satisfied the court that the case presents one of those rare situations in which the delay inherent in completing the adjudicatory process will frustrate the Board's ability to remedy the alleged unfair labor practices. If the Board clears that relatively high hurdle, the court must then balance any competing irreparable injury to respondent, and it must consider likelihood of success on the merits, examining that factor, not in isolation, but "in the context of the relative injuries to the parties and the public." Dataphase, 640 F.2d at 113. The purpose of this inquiry into the merits is not to second guess the Board's decision to commence enforcement proceedings. Rather, likelihood of success is relevant to the issuance of a preliminary injunction "because the need for the court to act is, at least, in part, a function of the validity of the applicant's claim." 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2948.3, at 184 (1995).

## II. The Merits.

In denying a preliminary injunction, the district court separately considered eight alleged unfair labor practices. As to the first six, the court concluded the Board did not present sufficient evidence of a likelihood of success on the merits. The court rejected the seventh allegation as moot because the employee in question had been returned to

Northern Railroad v. Bair, 957 F.2d 599, 603 n.4 (8th Cir.), cert. denied, 506 U.S. 821 (1992), was dicta. In particular, the author of this opinion, who joined Burlington Northern, now believes footnote 4 was wrong to suggest that "interjection of traditional equitable principles into the just and proper prong appears to be an anomaly."

his original location. The Board's eighth allegation was that PICA violated § 8(a)(3) by discharging union activist Jan Radder for his union activities. Although PICA introduced evidence Radder was fired for legitimate reasons, the court concluded there was a likelihood the Board will succeed on the merits of this claim. However, after balancing the competing claims of irreparable injury, the court denied a preliminary injunction reinstating Radder. Radder cannot be immediately reinstated because he is no longer qualified to be a head teacher under newly-amended Head Start regulations. Though PICA could hire Radder as an Assistant Teacher while he completes a certification program, most Assistant Teachers are parents from the communities served by PICA. The court found that the public interest reflected in the Head Start program would be harmed if Radder displaced an Assistant Teacher.

On appeal, the Board argues the district court erred in "failing to find that PICA engaged in an unlawful anti-union campaign." This argument misses the mark. The district court in a § 10(j) proceeding does not decide whether the respondent has committed unfair labor practices. That is the province of the Board's on-going adjudicatory proceeding, subject to judicial review by a court of appeals. See 29 U.S.C. § 160(e)-(f). Instead, as we have explained, the district court in a § 10(j) proceeding examines likelihood of success on the merits as a relevant equitable principle once the General Counsel has established irreparable injury -- extraordinary circumstances in which the alleged unfair labor practices threaten to frustrate the remedial purposes of the Act unless immediate action is taken. Here, the Board made no such showing. In the fall of 1997, there was no on-going collective bargaining or scheduled union election being frustrated or disrupted by the alleged unfair labor practices. The Union was not recognized or certified. While there had been organizing efforts during PICA's 1996-97 school year, Union meetings were poorly attended, and the Union's support never reached 25% of PICA's work force. By the summer of 1997, Union organizers decided to suspend their efforts until the fall. The General Counsel's complaint was filed in May 1997, the Board sought preliminary injunctive relief in August, but the Board does not cite evidence that organizing activities in fact

resumed in the 1997-1998 school year, or would have resumed but for PICA's alleged unfair labor practices. The Board presented some evidence that PICA's actions had a chilling effect on the Union's organizing efforts during the 1996-1997 school year. But that evidence does not establish that the delays inherent in the Board's adjudicatory procedures will frustrate its very potent remedial powers, an issue the Board does not even address on appeal. In these circumstances, we need not review the district court's rulings on likelihood-of-success issues in order to conclude the court did not abuse its discretion in denying these portions of the requested preliminary injunction.

The Board also argues the district court erred in refusing to order the interim reinstatement of union activist Jan Radder. Once again, the irreparable injury inquiry is critical. This inquiry does not focus on irreparable injury to Radder personally. Like discharged employees in other contexts, Radder will have an adequate monetary remedy if the General Counsel proves he was wrongfully discharged. See Sampson v. Murray, 415 U.S. 61, 90-91 (1974). Rather, the § 10(j) inquiry focuses on whether Radder's discharge so chilled on-going protected employee activity, such as collective bargaining or union organizing, that delay will frustrate the effectiveness of the Board remedies. The firing of union activists certainly can have that kind of impact during many labor disputes, and the Board has cited numerous § 10(j) cases in which interim reinstatement of discharged union activists was ordered. But to our knowledge no court has granted a § 10(j) reinstatement order in the circumstances presented here, where there was no collective bargaining in process, no recognized or certified union, no on-going organizing activities, no showing of strong union support among PICA's employees, and only one union activist discharged. These facts make a very weak showing of the kind of extraordinary circumstances that warrant a § 10(j) injunction. The Board also argues a § 10(j) reinstatement order would be more effective than a final Board order because Radder may not be available for reinstatement when the Board completes its adjudicatory proceedings. But this argument would apply to almost any discharged employee, and it addresses injury to Radder personally, not injury to the dynamics of an on-going labor dispute. When the Board's weak showing

of irreparable injury under § 10(j) is combined with the equitable considerations weighing against Radder's interim reinstatement -- he is no longer qualified to resume his former position, and his reinstatement as Assistant Teacher would likely affect PICA's Head Start program adversely by displacing a parent-teacher -- we conclude the district court did not abuse its discretion in denying a preliminary injunction reinstating him.

Finally, the Board argues the district court erred in failing to address whether a January 1997 disciplinary letter to Jan Radder violated § 8(a)(3). While the court did not separately discuss this alleged unfair labor practice, it did discuss the letter during its consideration of the Radder reinstatement issue. Given our disposition of the other § 10(j) issues, any oversight by the district court was at most harmless error.

The judgment of the district court is affirmed. PICA's motion to strike the Board's submission under 8th Cir. Rule 28(j), and the Board's motion to strike portions of PICA's brief, are denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.