# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3017
_____

M. Kathleen McKinney, Regional Director of Region 15 of the National Labor
Relations Board and on behalf of the National Labor Relations Board

*Petitioner - Appellee*

v.

Southern Bakeries, LLC

*Respondent - Appellant*

_____

John Hankins

*Amicus on Behalf of Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: April 16, 2015
Filed: May 27, 2015

_____

Before WOLLMAN and GRUENDER, Circuit Judges, and GRITZNER,[1] District
Judge.                                  _____

_____

[1]The Honorable James E. Gritzner, Senior United States District Judge for the
Southern District of Iowa, sitting by designation.

GRITZNER, District Judge.

M. Kathleen McKinney, the Regional Director of the Fifteenth Region of the National Labor Relations Board (respectively, the Director and the Board) sought a preliminary injunction from the district court under § 10(j) of the National Labor Relations Act of 1935 (the Act) as amended by the Labor Management Relations Act of 1947, 29 U.S.C. § 160(j). The district court granted the injunction pending the Board's final disposition of the unfair labor practices allegations. McKinney ex rel. NLRB v. S. Bakeries, LLC, 38 F. Supp. 3d 1019, 1036 (W.D. Ark. 2014). Southern Bakeries, LLC (Southern Bakeries or the Company) appeals. Having jurisdiction under 28 U.S.C. § 1292(a)(1), we vacate the injunction.

I.    **Background**

Southern Bakeries is a commercial bakery in Hope, Arkansas. In 2005, Southern Bakeries purchased the Hope facility from the now defunct Meyer's Bakeries and hired most of Meyer's Bakeries' former employees. Southern Bakeries recognized the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Local 111 (the Union), as the collective bargaining agent for Southern Bakeries' production and sanitation employees. Southern Bakeries' Hope facility employs approximately 200 production and sanitation workers. Southern Bakeries and the Union entered several collective bargaining agreements, the most recent of which expired on February 8, 2012.

In 2009, a Southern Bakeries' employee filed a decertification petition seeking to oust the Union. The Board held an election, and a majority of the employees voted to keep the Union. On December 7, 2011, an employee filed another decertification petition with the Board. The Union filed allegations of unfair labor practices. Following the Board's investigation, the Director concluded that Southern Bakeries improperly assisted the petition drive, and the Director did not conduct another

election. Southern Bakeries and the Director settled the allegation, and Southern Bakeries denied any fault.

On May 23, 2012, employees, led by hourly production employee John Hankins (Hankins),[2] filed still another decertification petition. A majority of the production and sanitation employees signed the petition. The Board scheduled a decertification election for February 7, 2013.

During the period between the filing of the May 23, 2012, petition and the scheduled election, Southern Bakeries and the Union continued a long-running dispute over the Union's access to the facility. As the February 2013 election drew near, Southern Bakeries made its opposition to the Union well known. For example, Southern Bakeries posted a memorandum suggesting the Union was planning to lead a strike similar to one at Hostess Bakeries, where the same international Union had represented the employees.

In addition, Southern Bakeries' executive vice president and general manager, Rickey Ledbetter (Ledbetter), gave the Southern Bakeries' employees a series of captive audience speeches encouraging them to vote against the Union. A fairly lengthy PowerPoint presentation accompanied each speech, and the speeches were delivered in English and Spanish. The speeches contained a variety of statements critical of the Union. Ledbetter emphasized the then-recent closing of Hostess Bakeries and asserted unions "strangled" Hostess Bakeries and other companies to death. Ledbetter also suggested that the Company would not retaliate against employees if the Union won the election. After these speeches, the Union filed blocking charges, and the Board postponed the election pending further investigation.

---

[2]Hankins sought to intervene in the district court, but the court denied his motion. Hankins did not appeal that denial but did file an amicus brief in this appeal.

A few months later, Hankins circulated a withdrawal petition and gathered the signatures of a majority of the employees. Hankins presented the petition to Ledbetter on June 13, 2013. After verifying the authenticity of the signatures, on July 3, 2013, Southern Bakeries denied the Union access to the plant, ceased dues check offs, and withdrew recognition of the Union.

The Regional Director filed a consolidated complaint against Southern Bakeries with the Board on January 10, 2014. An administrative law judge (ALJ) held a four-day hearing on the matter beginning on February 4, 2014.

On February 28, 2014, while the ALJ's decision was pending, the Director filed a § 10(j) petition for injunctive relief with the district court alleging Southern Bakeries engaged in acts that violate §§ 8(a)(1), (3), and (5) of the Act, 29 U.S.C. §§ 158(a)(1), (3), & (5). App. 6.[3] The district court permitted the Director to present the administrative record as an exhibit. S. Bakeries, 38 F. Supp. 3d at 1027 n.3. The district court entered an injunction on August 14, 2014, that, in pertinent part, enjoins and restrains Southern Bakeries and all persons acting in concert with it from failing to recognize the Union and directs Southern Bakeries to allow the Union access to the

---

[3]Specifically, the Director contends that Southern Bakeries interrogated employees by instructing them to report harassment from the Union, threatened employees by giving speeches about the possibility of job losses and plant closure, and implicitly promised employees benefits if they voted against the Union. The petition also contends that by unilaterally installing security cameras where the Union meets with employees, and although the cameras were covered during such meetings, the Company created the impression that employees' union activities were under surveillance. The petition further alleges that Southern Bakeries did not allow the Union access to the Company's facilities in a manner consistent with past practice.

At the administrative level, the Director also asserted that Southern Bakeries violated § 8(a)(3) by placing three union employees under investigation and firing another employee. However, the Director did not raise with the district court or on appeal any arguments regarding the employees under investigation, and she abandoned her argument regarding the fired employee after the ALJ determined that the Company discharged him lawfully. S. Bakeries, 38 F. Supp. 3d at 1029 n.4.

facility in a manner consistent with past practice and to post copies of the district court's order in English and Spanish.

On July 17, 2014, the ALJ issued a decision finding that Southern Bakeries committed a series of unfair labor practices. Southern Bakeries objected to the ALJ's findings and conclusions, and its appeal to the Board is pending.

On appeal of the district court's preliminary injunction, Southern Bakeries argues the district court erred in reinstating the Union. Southern Bakeries challenges the adequacy of evidence to support the injunction. The Company contends the only evidence the Director presented to demonstrate that the employees were coerced into withdrawing support for the Union was that several months prior to the presentation of the withdrawal petition, the Company installed two video-only cameras, conducted a lawful decertification campaign, and disallowed the Union from abusing its limited right of access under the terms of the collective bargaining agreement.

## II.    Discussion

We review "the District Court's material factual findings for clear error, its legal conclusions de novo, and the court's equitable judgment – the ultimate decision to grant the injunction – for an abuse of discretion." Osthus v. Whitesell Corp., 639 F.3d 841, 844 (8th Cir. 2011) (citation and internal quotation marks omitted). "An abuse of discretion occurs if a relevant factor that should have been given significant weight is not considered, if an irrelevant or improper factor is considered and given significant weight, or if a court commits a clear error of judgment in the course of weighing proper factors." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004).

The rationale behind § 10(j) is that "[t]ime is usually of the essence" in labor disputes and "the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives – the prompt elimination of the obstructions to

-5-

the free flow of commerce and encouragement of . . . free and private collective bargaining." S. Rep. No. 80-105, at 8 (1947). Accordingly, Congress enabled "the Board, acting in the public interest and not in vindication of purely private rights, [to] seek injunctive relief in the case of all types of unfair labor practices." Id.; see Frankl v. HTH Corp., 650 F.3d 1334, 1340 (9th Cir. 2011) (discussing the rationale of § 10(j)).

Courts in this Circuit apply the traditional four-factor preliminary injunction inquiry in deciding whether to issue a § 10(j) injunction. See Sharp v. Parents in Cmty. Action, Inc., 172 F.3d 1034, 1038 (8th Cir. 1999) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc) (establishing the four-factor preliminary injunction inquiry, which weighs the threat of irreparable harm to the movant, the balance of harms, the movant's likelihood of success on the merits, and the public interest)). The analysis proceeds from the principle that § 10(j) "is a limited exception to the federal policy against labor injunctions" and "is reserved for 'serious and extraordinary' cases when 'the remedial purpose of the Act would be frustrated unless immediate action is taken.'" Id. at 1037 (quoting Minn. Mining & Mfg. Co. v. Meter (3M), 385 F.2d 265, 270 (8th Cir. 1967)). Accordingly, the district court's "inquiry should focus *initially* on the question of irreparable injury." Id. at 1039 (emphasis added). The Director must satisfy "the court that the case presents one of those rare situations in which the delay inherent in completing the adjudicatory process will frustrate the Board's ability to remedy the alleged unfair labor practices." Id. In this circuit, the court proceeds to examine the likelihood of success on the merits and the other relevant factors only if the Director clears the "relatively high hurdle" of establishing irreparable injury. Id.[4]

---

[4]District Courts in this circuit have followed this important initial step in the analysis established in Sharp v. Parents in Cmty. Action, Inc., with a disciplined focus on the element of irreparable harm. See Hubbel v. Patrish LLC, 903 F. Supp. 2d 813, 817 (E.D. Mo. 2012) ("Should the Board fail to make this showing, I need not consider the remaining three Dataphase factors."); Chester ex rel. N.L.R.B. v. Eichorn Motors, Inc., 504 F. Supp. 2d 621, 627 (D. Minn. 2007) ("Should the Board

This approach respects Congress' design that the Board initially decides the merits of labor disputes and, on appeal, circuit courts review Board decisions with deference. See 29 U.S.C. §§ 160(c), (e); Cintas Corp. v. NLRB, 589 F.3d 905, 912 (8th Cir. 2009) (articulating the standard of review applicable to the Board's application to enforce an order). Granting a preliminary injunction in situations other than when "the remedial purpose of the Act would be frustrated unless immediate action is taken . . . would effectively circumvent the normal N.L.R.B. processes established by the Act and muddle the proper allocation of administrative and judicial functions." 3M, 385 F.2d at 270 (footnote omitted).

The district court did not begin its analysis with the irreparable harm inquiry. S. Bakeries, 38 F. Supp. 3d at 1028. Rather, the district court found a likelihood of success on the merits and then accepted, as evidence of irreparable harm, the Director's observation that "absent an interim bargaining order, there will be no collective bargaining." Id. at 1035. The district court also found a threat of irreparable harm because it concluded "the longer Southern Bakeries refuses to recognize the Union, the harder it will be for the Union to regain support if the Board finds Southern Bakeries' conduct was unlawful." Id. at 1035. Finally, the district court rejected Southern Bakeries' suggestion that the Director's eight-month delay in seeking an injunction after the Company withdrew recognition indicates the absence of irreparable harm. Id.

On appeal, the Director advances the general proposition that "a decline in the union's membership, loss of employee benefits, and ongoing erosion of the employer-union relationship [are] sufficient to establish irreparable harm." Lineback ex rel. NLRB v. Irving Ready-Mix Inc., 653 F.3d 566, 570 (7th Cir. 2011). The Director also argues that without interim relief, the Board's eventual remedy will likely fail to compensate employees for the variety of benefits the Union may have

_____

fail to make this showing, the Court need not consider the remaining three Dataphase factors.").

been able to secure in the interim.  These benefits are not only monetary, but extend to seniority, layoff, and recall provisions, as well as a grievance procedure.

This case presents unique circumstances as the unrefuted evidence before us indicates a majority of Southern Bakeries' employees have not supported the Union since at least May 2012 when Hankins circulated his first petition.[5]  The cases the Director relies on do not share these unique circumstances.  See, e.g., Irving Ready-Mix Inc., 653 F.3d at 568[6] (affirming the issuance of a preliminary injunction where the employer ousted the union during a strike, reduced employee benefits, and engaged in direct negotiation with nonunion employees); HTH Corp., 650 F.3d at 1363 (affirming preliminary injunction upon consideration of the employer's bad-faith refusal to negotiate and unilateral withdrawal of union recognition without an objective indication of a decline in union support and having concluded that such conduct "can demonstrate the likelihood of irreparable injury, absent some unusual circumstance indicating that union support is not being affected or that bargaining could resume without detriment as easily later as now"); Bloedorn v. Francisco Foods,

---

[5]Although the Director alleged Southern Bakeries solicited the 2011 petition, an allegation the Company settled while denying any fault, the Director has not pointed to evidence suggesting the 2012 petition is not a genuine reflection of employee sentiment.  Rather, in response to the 2012 petition, the Board scheduled an election for February 7, 2013.  The Director only suspended the election after the Union filed charges regarding Ledbetter's January and February 2013 captive audience speeches.

[6]We note that, unlike this Circuit, the Seventh Circuit evaluates irreparable harm on a sliding scale.  Compare Lineback ex rel. NLRB v. Spurlino Materials, LLC, 546 F.3d 491, 500 (7th Cir. 2008) ("The better the Director's case on the merits, the less its burden to prove that the harm in delay would be irreparable, and vice versa."), with Parents in Cmty. Action, Inc., 172 F.3d at 1038-39 (recognizing that the "flexibility inherent in traditional equitable principles" allows an appropriate response tailored to fit the circumstances, but limits consideration of the likelihood of success on the merits to cases where the Director  clears the "relatively high hurdle" to show a threat of irreparable harm).

Inc., 276 F.3d 270, 298-99 (7th Cir. 2001) (considering defendant's conduct following the purchase of a store, including alleged discrimination against the seller's former employees to avoid hiring a unionized workforce, and noting that in the absence of an injunction, the Board's reinstatement of the aggrieved employees would be impractical as the employees may then be unavailable and observing that the seller's former employees whom the defendant did hire were "working without the advocacy of their chosen representative"); Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26-27 (1st Cir. 1986) (affirming the district court's issuance of a preliminary injunction and its finding of irreparable harm stressing that "the employer continued its threats of discharge or plant closings even during the hearings before the ALJ on the previous unfair labor practices").

The relevant inquiry is whether this is the rare case when a preliminary injunction is necessary to preserve the effectiveness of the ordinary adjudicatory process. Parents in Cmty. Action, Inc., 172 F.3d at 1037. Consequently, we need not presently resolve whether the Company's allegedly unlawful activities caused the employees' disaffection. The cases the Director relies on indicate that if an employer replaces pro-union employees with nonunion employees, continues to blatantly violate the Act, or refuses to bargain and unilaterally withdraws recognition from a union that has demonstrated support, a preliminary injunction may appropriately prevent or counteract the decline in support for the union that is likely to follow. However, these cases do not support the issuance of a preliminary injunction here where the Union lacked majority support for nearly two years before the Director filed her § 10(j) petition.

There is no indication in this case that allowing the ordinary adjudicatory process to run its course would significantly undermine the Board's ability to remedy the alleged unfair labor practices. See Medallion Kitchens, Inc. v. NLRB, 811 F.2d 456, 460 (8th Cir. 1987) (noting that § 10(c) of the Act affords "the Board broad latitude in fashioning remedies for unfair labor practices"). The extraordinary relief granted by the August 14, 2014, preliminary injunction did not act to preserve the

status quo. Rather, it accelerated what at this point only may be the ultimate remedy. Because the Union had long been out of favor, when, if ever, Southern Bakeries is ordered to recognize the Union, the Union would have to perform largely the same work to rebuild support from employees.

The employees' lack of union representation while awaiting the Board's action is not enough to make this a "serious and extraordinary" case that requires injunctive relief. See Parents in Cmty. Action, Inc., 172 F.3d at 1037. It would be contrary to our precedent to find irreparable harm whenever employees could be without the nonmonetary benefits of collective bargaining while awaiting the Board's action. As here, where objective evidence indicates the Union lacks majority support and the Company has not acted to oust and replace union members or reduce employee benefits, the Court cannot find the temporary absence of a union representative automatically presents the "rare situation" that the Board's broad remedial powers cannot later remedy. See id. at 1039.

We agree with the District Court that the delay between the July 2013 withdrawal of recognition and the Director's February 2014 request for injunctive relief does not bar a finding of irreparable harm as "[c]omplicated labor disputes like this one require time to investigate and litigate." Muffley ex rel. NLRB v. Spartan Mining Co., 570 F.3d 534, 544 (4th Cir. 2009). We also agree that "[d]elay is only significant if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief." Sharp ex rel. NLRB v. Webco Indus., Inc., 225 F.3d 1130, 1136 (10th Cir. 2000) (citation and internal quotation marks omitted). Here, as discussed, the ordinary adjudicatory process is likely to be as effective as interim relief.

In sum, the district court erred in not first and fully considering whether this case presents a threat of irreparable harm "to the collective bargaining process or to other protected employee activities." Parents in Cmty. Action, Inc., 172 F.3d at 1038. This case is not one of the "rare situations in which the delay inherent in completing

the adjudicatory process will frustrate the Board's ability to remedy the alleged unfair labor practices." Id. at 1039. The Board has "very potent remedial powers" that this court will enforce when properly applied. Id. at 1040. Because we conclude the Board did not clear the "relatively high hurdle" of demonstrating irreparable injury, we need not address the other preliminary injunction factors. Id. We hold the Board's normal adjudicatory process will not frustrate the remedial purpose of the Act in this case and therefore conclude the district court abused its discretion in granting injunctive relief.

## III.    Conclusion

For the foregoing reasons, we vacate the injunction.

_____